AUSA: Connie L. Dang

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 636** |

UNITED STATES OF AMERICA

v.

BRANDALENE HORN,

    a/k/a "Brandy Horn"
    a/k/a "Brandy Silvey"
    a/k/a "Brandy Barror,"

                    Defendant.

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 1341, 1343, 2314, and 2.

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

    DELEASSA PENLAND, being duly sworn, deposes and says that she is a Special Agent with the United States Attorney's Office for the Southern District of New York ("USAO, SDNY"), and charges as follows:

### COUNT ONE
### (Mail Fraud)

    1.    From at least in or about April 2022 through at least in or about February 2024, in the Southern District of New York and elsewhere, BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, placed in a post office and authorized depository for mail matter, a matter and thing whatever to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing whatever to be sent and delivered by a private and commercial interstate carrier, and took and received therefrom, such matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matter and thing, to wit, HORN engaged in a scheme to fraudulently induce victim companies to ship clothing and accessories to HORN by United States mail or commercial interstate carrier and subsequently stole and sold those items to buyers in the Southern District of New York and elsewhere through use of the United States mail or commercial interstate carrier.

(Title 18, United States Code, Sections 1341 and 2.)

## COUNT TWO
### (Wire Fraud)

2.      From at least in or about April 2022 through at least in or about February 2024, in the Southern District of New York and elsewhere, BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, HORN engaged in a scheme to fraudulently induce victim companies to ship clothing and accessories to HORN which HORN subsequently stole and sold to buyers in the Southern District of New York and elsewhere, and HORN sent and received, and caused others to send and receive, interstate wires in furtherance of the scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE
### (Interstate Transportation of Stolen Property)

3.      From in or about April 2022, through in or about February 2024, in the Southern District of New York and elsewhere, BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, knowingly transported, transmitted, and transferred in interstate and foreign commerce goods, wares, merchandise, securities and money, of the value of $5,000 and more, knowing the same to have been stolen, converted and taken by fraud, to wit, HORN transmitted and caused to be transmitted stolen clothing and accessories worth approximately $750,000 from Michigan to New York and elsewhere.

(Title 18, United States Code, Sections 2314 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.      I am a Special Agent with the USAO, SDNY. I have been personally involved in the investigation of this matter, and I base this affidavit on that experience, on my conversations with other law enforcement agents, witnesses, and others, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview of the Fraud Scheme

5.      Since in or about June 2023, USAO, SDNY has been investigating the theft and attempted thefts of items, including high-end and designer women's clothing and accessories, from

2

several clothing rental companies that offer subscription-based clothing rental services and the sale of those stolen items on e-commerce marketplaces (the "Fraud Scheme").

6. Based on my conversations with victim companies and review of records provided by victim companies, an e-commerce marketplace used by BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, a credit union, providers of email services, and a telecommunications company, I have learned, among other things, the following facts concerning the Fraud Scheme:

a. Certain clothing rental companies (the "Clothing Rental Companies") offer, among their various offerings and services, subscription-based clothing rental services. Those services generally allow customers to pay a monthly subscription fee to access the companies' inventories of rental clothing and accessories and select a certain number of items to rent per month. Generally, the subscription-based clothing rental services offered by the Clothing Rental Companies require customers to pay the monthly subscription fee to continue to keep rented items for a further period. Customers who fail to pay the monthly subscription fee by the billing date are required to return rented items within a specified timeframe and if items are not returned, the customer is charged a certain purchase price for each item that is not returned.

b. HORN opened over 170 accounts with at least three clothing rental companies (the "Victim Clothing Rental Companies") that offered subscription-based clothing rental services. HORN used different email addresses and phone numbers to open the accounts but listed a specific address in Freeland, Michigan (the "Michigan Address") as the shipping and billing address on each account. HORN also provided several different credit or debit card numbers as the method of payment for the various accounts she opened.

c. According to Internet Protocol ("IP") address information obtained from email service providers and subscriber records from Charter Communications, HORN is the subscriber of the IP address associated with the opening of the email addresses used to create many of the accounts with the Victim Clothing Rental Companies, and the Michigan Address is listed as the service address. According to IP address information obtained from one of the Victim Clothing Rental Companies and subscriber records from Charter Communications, an internet service account for which HORN is the subscriber and the Michigan Address is listed as the service address opened a number of accounts with that Victim Clothing Rental Company.

d. From in or about at least April 2022 to at least in or about October 2023, HORN placed orders to rent clothing from the Victim Clothing Rental Companies, including high-end and designer clothing and accessories worth thousands of dollars, using various credit or debit card numbers.

e. HORN stole items she rented from the Victim Clothing Rental Companies by keeping, instead of returning, the rented items. When the companies attempted to charge her the fee to renew her subscription or the purchase price for items she failed to return, the payment methods HORN had provided—that is, various credit or debit card numbers—typically failed and payment would be declined. Based on my review of records from the Victim Clothing Rental Companies and a credit union, I know that attempts by the Victim Clothing Rental Companies to charge HORN often failed after HORN or an individual named "George Horn," who is believed

3

to be HORN's husband,[1] disputed the charges or reported the credit or debit cards she used to place orders with the Victim Clothing Rental Companies as malfunctioning or reflecting fraudulent transactions. The Victim Clothing Rental Companies sent multiple notices to HORN and requested that she provide a valid method of payment after the attempts to charge HORN failed. However, HORN failed to provide any valid method of payment. HORN's activity led the Victim Clothing Rental Companies to flag or close her accounts, but HORN opened new accounts so she could continue to place orders to rent clothing and accessories that she would then steal.

    f. After she stole rented items from the Victim Clothing Rental Companies, HORN sold or attempted to sell those items on at least one e-commerce marketplace (the "Resale Marketplace"). HORN created listings on the Resale Marketplace for hundreds of items of stolen clothing and accessories. Those listings generally included photographs of the item, the item name, an item description, the item size, and the item color. HORN frequently also used the Victim Clothing Rental Companies' professional photographs of the items in her own listings on the Resale Marketplace.

    g. The Victim Clothing Rental Companies affixed heat-applied bar codes to the items they rented to customers, which bear unique serial numbers to enable the Victim Clothing Rental Companies to track the items. Based on my training and experience and my conversations with the Victim Clothing Rental Companies, I know that removal of those heat-applied bar codes makes it more difficult for the companies to track the items they rent to customers and therefore enables an individual to sell or transfer rented items more easily. I also know that the removal of a heat-applied bar code from an item can leave indentations and/or residue on the item. As set forth in further detail below, before selling stolen items on the Resale Marketplace, HORN appears to have removed the heat-applied bar codes from the items, which often left indentation, marks, and/or residue where the bar code had been removed.

Victim Company-1

    7. On or about October 20, 2023, I spoke with counsel for a victim of the Fraud Scheme, which is a clothing rental company headquartered in Brooklyn, New York ("Victim Company-1"). Based on my discussions with counsel for Victim Company-1 and my review of materials provided by Victim Company-1, email service providers, and Charter Communications, I have learned, among other things, the following:

    a. From in or about April 2022 to in or about May 2023, BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, opened approximately 145 accounts with Victim Company-1. HORN listed the Michigan Address as the billing and shipping address for each of the accounts but used different email addresses to open the accounts. Based on my review of records from Victim Company-1, Charter Communications, and email service providers, I know that the IP address associated with the opening of at least 61

---

[1] Based on my review of records from a credit union, I know that HORN and George Horn previously shared a bank account which lists the Michigan Address as the address on the account and based on my review of records from a mobile payment service, I know that HORN and George Horn made payments to each other with payment notes indicative of two individuals in an intimate relationship with each other. For these reasons and because HORN and George HORN share the same last name, I believe that George Horn was HORN's husband.

of the email addresses HORN used to open accounts with Victim Company-1 is associated with an internet service account for which HORN is the subscriber and the Michigan Address is the service address.

    b.  During this period, HORN used the accounts she opened with Victim Company-1 to place orders for subscription-based clothing rental services, which enabled HORN to rent high-end and designer clothing and accessories. After receiving rented items from Victim Company-1, she kept the items instead of returning them to the company and when Victim Company-1 attempted to charge HORN to either renew her subscription for the following month or to recover the purchase price of the items she failed to return, Victim Company-1 was unable to charge the credit or debit card that HORN provided because the payment was declined. Victim Company-1 sent multiple notices to HORN to the email addresses associated with her accounts and requested that she provide a valid method of payment, but HORN failed to provide any valid method of payment. HORN's activity led Victim Company-1 to flag or close her accounts.

    c.  On or about June 30, 2023, a representative of Victim Company-1 notified me that the company believed HORN was selling rented items stolen from the company on the Resale Marketplace, using an account with the username "cashhorn" (the "Cashhorn Account"). On or about July 6, 2023, I identified and reviewed the Cashhorn Account and for the reasons that follow, I believe the account is HORN's account. Based on my review of records obtained from the Resale Marketplace, I know that the Cashhorn account is registered using the email address "brandyinthesky@gmail.com" and is associated with bank accounts which, based on my review of HORN's bank records from a credit union, are accounts opened in HORN's name and for which HORN is a signer.

   8.  Based on my review of records obtained from Victim Company-1, I know that BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, created an account with Victim Company-1 on or about March 22, 2023 and placed an order on the same day for a dress described as "Daisy Halter Maxi" by the brand "Mira Mikati," which was delivered to HORN at the Michigan Address on or about March 24, 2023.

   9.  The Cashhorn Account listed for sale a dress described as "Mira Mikati dress." Based on my observation of the listing, I know that it contained an image that appeared to be a professional photograph of the item and a description that indicated the item was a "daisy dress" in the size "US 4 or 38." The listing on the Cashhorn Account also appeared to substantially match Victim Company-1's listing on its platform of a dress described as "Daisy Halter Maxi" by the brand "Mira Mikati," and used the same professional photograph of the dress. Based on my discussions with counsel for Victim Company-1, I know that this photograph is a proprietary photograph taken by Victim Company-1 for use on the company's platform. Below is an image of the listing for the "Mira Mikati dress" on the Cashhorn Account:



Below is an image of Victim Company-1's listing for a dress described as "Daisy Halter Maxi" by the brand "Mira Mikati":



10. On or about October 23, 2023, using the fictitious name "Michael Smith" and from a computer located in Manhattan, New York, I placed an order for the "Mira Mikati dress" that was listed on the Cashhorn Account and provided a post office box (the "UC PO Box") in Manhattan, New York as the shipping address.

11. Based on my participation in this investigation and my conversations with other law enforcement officers, I know that, on or about October 27, 2023, the order was delivered to the UC PO Box. Based on my conversations with other law enforcement officers and my examination of the package delivered to the UC PO Box, I know that the shipping label on the

6

package indicated that it had been sent from a post office box in Freeland, Michigan. On or about October 30, 2023, I opened the package and found that it contained a dress that matched the dress listed on the Cashhorn Account as the "Mira Mikati dress." Based on my examination of the dress, I know that the label on the dress read "Mira Mikati" and indicated that it was a size "EU 38"; I also know that the dress label contained a rectangular-shaped indentation with residue, which, as described above, is indicative of the removal of a heat-applied bar code. Below are images of (i) the dress and its packaging and (ii) the dress label:

 

12. Based on my review of records obtained from Victim Company-1, I know that, on or about May 2, 2023, BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, created an account with Victim Company-1 and placed an order on the same day for a dress described as a "Cherie Gown" by the brand "K.NGLSEY," which was delivered to HORN at the Michigan Address on or about May 4, 2023.

13. The Cashhorn Account listed for sale a dress described as "K.ngsley Cherie gown." Based on my review of the listing, I know that it contained an image that appeared to be a professional photograph of the item and a description that indicated the item was a size "XS." The listing on the Cashhorn Account appeared to substantially match Victim Company-1's listing of a dress described as "Cherie Gown" by the brand "K.NGSLEY," and used the same professional photograph of the dress. Based on my discussions with counsel for Victim Company-1, I know that this photograph is a proprietary photograph taken by Victim Company-1 for use on the company's platform. Below is an image of the listing for the "K.ngsley Cherie gown" on the Cashhorn Account:

7



Below is an image of Victim Company-1's listing for a dress described as "Cherie Gown" by the brand "K.NGSLEY":




14.     On or about October 23, 2023, using the fictitious name "Michael Smith" and from a computer located in Manhattan, New York, I placed an order for the "K.ngsley Cherie gown" that was listed on the Cashhorn Account and provided the UC PO Box as the shipping address.

8

15. Based on my participation in this investigation and my conversations with other law enforcement officers, I know that, on or about October 27, 2023, the order was delivered to the UC PO Box. Based on my conversations with other law enforcement officers and my examination of the package delivered to the UC PO Box, I know that the shipping label on the package indicated that it had been sent from a post office box in Freeland, Michigan. On or about October 30, 2023, I opened the package and found that it contained a dress that matched the dress listed on the Cashhorn Account as the "K.ngsley Cherie gown." Based on my examination of the dress, I know that the label on the dress read "K.ngsley" and indicated that it was a size "XS"; I also know that the dress label contained a rectangular-shaped indentation with residue. Below are images of (i) the dress and its packaging and (ii) the dress label:





16. Based on my review of records obtained from Victim Company-1, I know that BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror,"

9

the defendant, created an account with Victim Company-1 on or about March 9, 2023 and placed an order on the same day for a dress described as "Black Ruffle Slip Gown" by the brand "Caroline Constas," which was delivered to HORN at the Michigan Address on or about May 11, 2023.

17.    The Cashhorn Account listed for sale a dress described as "Caroline Constas black gown." Based on my review of the listing, I know that it contained an image that appeared to be a professional photograph of the item and a description that indicated the item was "black ruffle slit gown" and was a size "M." The listing on the Cashhorn Account appeared to substantially match Victim Company-1's listing of a dress described as "Black Ruffle Slip Gown" by the brand "Caroline Constas," which used the same professional photograph of the dress. Based on my discussions with counsel for Victim Company-1, I know that this photograph is a proprietary photograph taken by Victim Company-1 for use on the company's platform. Below is an image of the listing for the "Caroline Constas black gown" on the Cashhorn Account:



Below is an image of Victim Company-1's listing for a dress described as "Black Ruffle Slip Gown" by the brand "Caroline Constas":

10



★★★★☆ (71)
(4 out of 5 stars)

**CAROLINE CONSTAS**
Black Ruffle Slip Gown
$795 original retail

Rent With Subscription
Always Have 5+ Items At Home

Reserve A One-Time Rental
Book A Look For A Specific Date

Product Details           +

Stylist Notes             +

Size & Fit                —

Sized: XS-L, one length available. Regular measures 61" from shoulder to longest hemline.

Share                     +

18. On or about October 23, 2023, using the fictitious name "Michael Smith" and from a computer located in Manhattan, New York, I placed an order for the "Caroline Constas black gown" dress that was listed on the Cashhorn Account and provided the UC PO Box as the shipping address.

19. Based on my participation in this investigation and my conversations with other law enforcement officers, I know that, on or about October 27, 2023, the order was delivered to the UC PO Box. Based on my conversations with other law enforcement officers and my examination of the package delivered to the UC PO Box, I know that the shipping label on the package indicated that it had been sent from a post office box in Freeland, Michigan. On or about October 30, 2023, I opened the package and found that it contained a dress that matched the dress listed on the Cashhorn Account as the "Black Ruffle Slip Gown." Based on my examination of the dress, I know that the label on the dress read "Caroline Constas" and indicated that it was a size "M"; I also know that the dress label contained a rectangular-shaped indentation with residue. Below are images of (i) the dress and its packaging and (ii) the dress label:




20. Based on my review of records from Victim Company-1, my review of records from the Resale Marketplace, and my review of the Cashhorn Account's listings, I know that the items that BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, sold on the Cashhorn Account largely matched the items that she stole from Victim Company-1. For example:

      a. HORN stole 17 items of rented clothing made by the brand Veronica Beard—including five coats named the "India Dickey" coat—and sold each of those same 17 items on the Cashhorn Account, including five "India Dickey" coats.

      b. HORN stole five rented bags—including three bags named "Tabitha"—and one pair of rented earrings made by the brand Lele Sadoughi and sold each of those same six items on the Cashhorn Account, including three "Tabitha" bags.

      c. HORN stole eight pairs of Gucci sunglasses of different models—such as, for example, "Grey Cat Eye" Gucci sunglasses—and sold each of those same eight pairs of Gucci sunglasses on the Cashhorn Account, including the "Grey Cat Eye" Gucci sunglasses.

      d. HORN stole 13 items made by the brand Coperni—including two coats named "Twisted Cutout"—and sold each of those same 13 items on the Cashhorn Account, including two coats described as "Twist coats."

21. Based on my discussions with counsel for Victim Company-1 and my review of documents provided by Victim Company-1, I know that, on or about May 24, 2023, Victim Company-1 sent a letter addressed to BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, via both email to "brandylhorn@gmail.com" and "cashsilvey@gmail.com" and U.S. mail to the Michigan Address,

which notified HORN that Victim Company-1 was aware that she had stolen, instead of returned, items she rented from Victim Company-1 and had sold those stolen items on the Resale Marketplace (the "Warning Letter"). The Warning Letter notified HORN that her conduct violated Victim Company-1's terms of service and civil and criminal statutes, and could lead to civil and criminal penalties. The Warning Letter also demanded that HORN immediately return the stolen items and repay Victim Company-1 for items she had sold on the Resale Marketplace. Based on my discussions with counsel for Victim Company-1, HORN did not take any action in response to the Warning Letter and did not return stolen items or repay Victim Company-1.

22. Based on my review of records from Victim Company-1, my review of items listed for sale on the Cashhorn Account, and my review of records from the Resale Marketplace, I know that BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, stole approximately 878 items, valued at approximately $756,484, from Victim Company-1 and sold approximately 819 of those items on the Resale Marketplace.

### Victim Company-2

23. On or about November 1, 2023, I interviewed an employee of another victim of the Fraud Scheme ("Victim Company-2"). Based on my interview of that employee of Victim Company-2, which is a clothing rental company headquartered in Gardena, California, and my review of materials provided by Victim Company-2, email service providers, and Charter Communications, I have learned, among other things, the following:

   a. From in or about August 2022 to in or about July 2023, BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, opened approximately 10 accounts with Victim Company-2. Like with Victim Company-1, while HORN listed the Michigan Address as the billing and shipping address for each of the accounts, each of the accounts used different email addresses and phone numbers. Based on my review of records from Victim Company-2, Charter Communications, and email service providers, I know that the IP address associated with the opening of at least five of the email addresses HORN used to open accounts with Victim Company-2 were associated with an internet service account for which HORN is the subscriber and the Michigan Address is the service address.

   b. During this period, HORN used the accounts she opened with Victim Company-2 to place orders for subscription-based clothing rental services. After receiving rented items from Victim Company-2, she kept the items instead of returning them to the company and when Victim Company-2 attempted to charge HORN to either renew her subscription for the following month or to recover the purchase price of the items she failed to return, Victim Company-2 was unable to charge the credit or debit card that HORN provided because the payment wase declined. Victim Company-2 sent multiple notices to HORN to the email addresses associated with her accounts and requested that she provide a valid method of payment, but HORN failed to provide any valid method of payment. HORN's activity led Victim Company-2 to flag or close her accounts.

   c. After stealing the items she rented from Victim Company-2, HORN sold the items on the Resale Marketplace. For example:

     i.  The Cashhorn Account listed for sale a dress described as "Nookie gown." Based on my observation of the listing on or about November 30, 2023, I know that it contained an image that appeared to be a professional photograph of the item and a description that indicated the item was a "hot pink gown." The listing on the Cashhorn Account appeared to substantially match Victim Company-2's listing of a dress described as "Bailey Gown" by the brand "Nookie," which used the same professional photograph of the dress. Below is an image of the listing for the "Nookie gown" on the Cashhorn Account:



Below is an image of Victim Company-2's listing for a dress described as "Bailey Gown" by the brand "Nookie":



**BAILEY GOWN**
**NOOKIE**
**Size: S**

**Color: NEON PINK**

     ii.  The Cashhorn Account also listed for sale a dress described as "Selkie garden party dress." Based on my observation of the listing on or about November 30,

2023, I know that it contained an image that appeared to be a professional photograph of the item. The listing on the Cashhorn Account appeared to substantially match Victim Company-2's listing of a dress described as "Garden Party Dress" by the brand "Selkie," which used the same professional photograph of the dress. Below is an image of the listing for the "Selkie garden party dress" on the Cashhorn Account:



Below is an image of Victim Company-2's listing for a dress described as "Garden Party Dress" by the brand "Selkie":



**GARDEN PARTY DRESS**

**SELKIE**

**Size: L**

**Color: QUEEN BEE**

24.    Based on my review of records from Victim Company-2, my review of items listed for sale on the Cashhorn Account, and my review of records from the Resale Marketplace, I know that BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, stole approximately 57 items, valued at approximately $16,275, from Victim Company-2, and sold approximately 44 of those items on the Resale Marketplace.

15

### Victim Company-3

25.     On or about December 20, 2023, I interviewed an employee of another victim of the Fraud Scheme ("Victim Company-3"). Based on my interview of that employee of Victim Company-3, which is a clothing rental company headquartered in Philadelphia, Pennsylvania, and my review of materials provided by Victim Company-3, email service providers, and Charter Communications, I have learned, among other things, the following:

a.     From in or about April 2022 to in or about October 2023, BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, opened approximately 18 accounts with Victim Company-3. Like with Victim Company-1 and Victim Company-2, while HORN listed the Michigan Address as the billing and shipping address for each of the accounts, each of the accounts used different email addresses and phone numbers. Based on my review of records from Victim Company-3, Charter Communications, and email service providers, I know that the IP address associated with the opening of at least eight of the email addresses HORN used to open accounts with Victim Company-3 were associated with an internet service account for which HORN is the subscriber and the Michigan Address is the service address.

b.     During this period, HORN used the accounts she had opened with Victim Company-3 to place orders for subscription-based clothing rental services. After receiving rented items from Victim Company-3, HORN kept the items instead of returning them to the company and when Victim Company-3 attempted to charge HORN to either renew her subscription for the following month or to recover the purchase price of the items she failed to return, Victim Company-3 was unable to charge the credit or debit card that HORN had provided because the payment was declined. Victim Company-3 sent multiple notices to HORN to the email addresses associated with her accounts and requested that she provide a valid method of payment, but HORN failed to provide any valid method of payment. HORN's activity led Victim Company-3 to flag or close her accounts.

26.     Based on my review of records from Victim Company-3, my review of items listed for sale on the Cashhorn Account, and my review of records from the Resale Marketplace, I know that BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, stole approximately 128 items, valued at approximately $50,344, from Victim Company-3, and sold approximately 110 of those items on the Resale Marketplace.

27.     Based on my review of records from the Victim Clothing Rental Companies, I know that, during the period from April 2022 to October 2023, BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, stole a total of approximately 1,063 items from Victim Clothing Rental Companies, which are valued at a total of approximately $823,000. Based on my review of records from the Resale Marketplace, I know that the items HORN sold on the Resale Marketplace are valued at a total of approximately $750,000.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of BRANDALENE HORN, a/k/a "Brandy Horn," a/k/a "Brandy Silvey," a/k/a "Brandy Barror," the defendant, and that she be arrested, and imprisoned or bailed, as the case may be.

_DeLeassa Penland (by VF with permission)_
DeLeassa Penland
Special Agent
U.S. Attorney's Office for
the Southern District of New York

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this __12__ day of February, 2024.

_____
THE HONORABLE VALERIE FIGUEREDO
United States Magistrate Judge
Southern District of New York